In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-3058

ANNARE L. LOUBSER,

*Plaintiff-Appellant*,

*v.*

ROBERT W. THACKER, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 4:04-CV-75 AS—**Allen Sharp**, *Judge*.

SUBMITTED DECEMBER 5, 2005—DECIDED MARCH 8, 2006

Before POSNER, WILLIAMS, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. Annare Loubser brought this federal civil rights suit under 42 U.S.C. § 1983 against more than 40 individuals who she alleges conspired to defraud her by corrupting her divorce proceedings; those proceedings ended in a judgment that, she claims, deprived her of property to which she was entitled. She brought this suit after the state appellate court had affirmed the judgment in the divorce proceedings. The district court dismissed the suit on the pleadings as barred by two judge-made doctrines: *Rooker-Feldman*, which denies the lower federal courts the authority to overturn a state court judgment, and the

"domestic relations exception," a judge-made doctrine that denies to the federal courts jurisdiction over domestic-relations matters such as divorce on the theory that the reference to "the judicial Power" in Article III of the Constitution was intended to exclude the powers exercised by Britain's ecclesiastical courts, which, rather than the common law courts at Westminster, exercised jurisdiction in such matters. (Because the judgment in the divorce suit was civil rather than criminal, the doctrine of *Heck v. Humphrey* is clearly inapplicable. See, e.g., *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005).)

Loubser does not have a lawyer. Although her self-authored complaint is quite well written, it is sprawling—71 pages long divided into 115 paragraphs—disorganized, and repetitious. Worse, it has a paranoid quality, with some of the allegations bordering on, perhaps crossing over into, the fantastic. The complaint charges that over a three-year period beginning in August of 2001, state judges and court reporters, Loubser's own lawyers, her former husband, building contractors, the owner of a jewelry store, and numerous friends and relatives of the other conspirators, conspired to destroy her financially and drive her out of the country by manipulating the divorce proceedings to deny her due process of law, and that they did all this because they consider her a "fucking South African Bitch who makes too much Fucking Money" as a physical therapist. One of the defendants, she charges, destroyed title documents essential to her divorce proceedings; two of the defendants effaced all records of the existence of a related case; her own lawyers, along with court reporters, altered transcripts; her lawyers refused to present crucial evidence; the judge presiding over the divorce proceeding consorted improperly with Loubser's ex-husband and a number of his witnesses, one of whom touched the judge and "rubbed his belly" (at

a party, though, not in court). Among still other allegations, Loubser charges that the judge joked about golf with a witness while he was testifying and the court reporter deliberately deleted the exchange from the transcript, and that Loubser's ex-husband said to the judge, "goodbye judgee wudgee, I will see you around town." In support of the belly-rubbing allegation, Loubser has included in the appendix to her opening brief in this court photographs of the incident, but the photographs do not depict anybody's belly being rubbed.

It is highly improbable that the suit has any merit, but the allegations are not *so* fantastic that the suit can be dismissed out of hand, as being obviously frivolous, as in *Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000). The setting for the alleged conspiracy is White County, Indiana, a rural county with a population of only 25,000. The county seat, Monticello, where the divorce proceedings were held, has a population of only 5,500. No doubt there is much less formality than attends litigation in big cities and much more social interaction among the judges, lawyers, and other members of the community. Loubser has probably mistaken innocent interactions for a vast conspiracy. But this is not a case on the fantasy level of *Lee*, where the complaint "charg[ed] the United States and China with a conspiracy to 'bio-chemically and bio-technologically infect and invade' " various people including Lee "with a mind reading and mental torture device" called "MATRET," to elude which "Lee claim[ed] to have developed a variety of space technologies, …including an email system and nanny services, that [would] enable the victims of MATRET to relocate to MATRET-free planets." The reference to extraterrestrial nanny service was the clincher.

The grounds on which the district court dismissed Loubser's suit were erroneous. The claim that a defendant

in a civil rights suit "so far succeeded in corrupting the state judicial process as to obtain a favorable judgment" is not barred by the *Rooker-Feldman* doctrine. *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995). Otherwise there would be no federal remedy other than an appeal to the U.S. Supreme Court, and that remedy would be ineffectual because the plaintiff could not present evidence showing that the judicial proceeding had been a farce, cf. *Moore v. Dempsey*, 261 U.S. 86, 91 (1923) (Holmes, J.); one cannot present evidence to an appellate court. This is in general rather than in every case, and maybe Indiana law would have enabled Loubser to present evidence in her appeal, but this issue has not been addressed. Moreover, the relief she seeks would go far beyond merely modifying the division of property decreed by the divorce court. She wants damages for the harassment to which the defendants allegedly subjected her en route to the judgment, including efforts to destroy her business as a physical therapist and drive her out of the country.

This is not to say that Loubser had no possible state remedies, including bringing a postjudgment challenge to the decree as having been procured by fraud and complaining about judicial misconduct to the Indiana Judicial Nominating Commission, though the latter course would not have gotten her the monetary damages that she is seeking. But *Rooker-Feldman* does not impose a duty to exhaust judicial and administrative remedies before pursuing a federal civil rights suit. Except in prisoner suits, there is no requirement that a plaintiff in a suit under 42 U.S.C. § 1983 exhaust state remedies. E.g., *Wilkinson v. Dotson, supra*, 125 S. Ct. at 1246; *Patsy v. Board of Regents*, 457 U.S. 496, 501 (1982). And, as we pointed out, merely modifying the divorce decree would not give Loubser all the relief she seeks in this lawsuit.

The domestic-relations exception to federal jurisdiction is not applicable to this case either. A federal court cannot grant or annul a divorce, but that is not what Loubser is seeking.

Of course her claims against the judges are barred; she is complaining about their judicial conduct, and they have absolute immunity from such damages claims. E.g., *John v. Barron*, 897 F.2d 1387, 1391-92 (7th Cir. 1990); *J.B. v. Washington County*, 127 F.3d 919, 925 (10th Cir. 1997). The other official defendants, the court reporters, do not. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436-37 (1993); *McCullough v. Horton*, 69 F.3d 918 (8th Cir. 1995) (per curiam). *Forte v. Sullivan*, 935 F.2d 1, 3 (1st Cir. 1991) (per curiam), notes a circuit split on this issue, but the split was resolved in the *Antoine* case in favor of liability.

Not that court reporters are liable in a section 1983 case for innocent errors, even if negligent. Section 1983 claims cannot be founded on negligence. *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Lewis v. Anderson*, 308 F.3d 768, 773 (7th Cir. 2002); *Upsher v. Grosse Point Public School System*, 285 F.3d 448, 453-54 (6th Cir. 2002). But if, as the complaint alleges, the reporters deliberately altered a transcript as part of a conspiracy to defraud a litigant, they can, lacking absolute immunity, be held liable. The defendants do not argue otherwise.

The remaining issue is whether the allegations of conspiracy are sufficiently informative to survive dismissal. The issue is close. Although conspiracy is not something that Rule 9(b) of the Federal Rules of Civil Procedure requires be proved with particularity, and so a plain and short statement will do, *Hoskins v. Poelstra*, 320 F.3d 761 (7th Cir. 2003); *Walker v. Benjamin*, 293 F.3d 1030, 1039 (7th Cir. 2002); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); see

generally *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), it differs from other claims in having a degree of vagueness that makes a bare claim of "conspiracy" wholly uninformative to the defendant. Federal pleading entitles a defendant to notice of the plaintiff's claim so that he can prepare responsive pleadings. Fed. R. Civ. P. 8(a); *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005); *Lotierzo v. A Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1183 (11th Cir. 2002). That is why courts require the plaintiff to allege the parties, the general purpose, and the approximate date of the conspiracy. *Walker v. Thompson*, *supra*, 288 F.3d at 1007-08; *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 858-60 (7th Cir. 1999).

But this information can be found in the plaintiff's complaint, though in disjointed form. The parties to the conspiracy are clearly identified; the conspiracy is alleged to have begun in August of 2001 and to have continued for at least three years; and its purpose—to deprive the plaintiff of her property and livelihood by corrupting her divorce proceeding—is clearly if repetitiously stated as well. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). The dates on which particular defendants joined the conspiracy are not alleged, but that is not the kind of information that a plaintiff can be expected to have when she files her complaint.

What is true is that the complaint is confusing. The district court would have been within its rights in dismissing it on that ground, e.g., *Fidelity National Title Ins. Co. v. Intercounty National Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005); *Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir. 2003); *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001); *In re Westinghouse Securities Litigation*, 90 F.3d 696, 703-04 (3d Cir.

1996); *Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995), but with leave to replead. That is not what the court did; it dismissed with prejudice, which would have been proper on grounds of confusion only after the plaintiff had demonstrated her inability to file a lucid complaint, which she has not done. True, this was her second, amended complaint, but the first was not denied on the ground that it was confusing. Nor was confusion among the court's grounds for the dismissal of the second complaint. We should cut her a bit of slack, since she is pro se.

The judgment is affirmed with respect to the dismissal of the judges as defendants, but is otherwise vacated and the case remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED WITH DIRECTIONS.

SYKES, *Circuit Judge*, concurring in part, dissenting in part. I agree that Loubser's suit is not barred by the *Rooker-Feldman* doctrine or the "domestic relations exception" to federal jurisdiction. I also agree that the state court judges have absolute immunity and the dismissal of the claims against them should be affirmed on that alternative basis. I cannot agree, however, with the majority's decision to reverse the judgment dismissing the claims against the remaining defendants, and to that extent must respectfully dissent.

Annare Loubser received an unfavorable judgment in what apparently were highly protracted and contentious

divorce proceedings in Indiana state court. She appealed the decision, but the Indiana Court of Appeals affirmed and the Indiana Supreme Court denied review. Loubser then brought this federal suit under 42 U.S.C. § 1983 against *more than 40 defendants*—her former husband; various and sundry people involved in the state divorce court proceedings, including two trial judges, two court reporters, several attorneys and a paralegal, numerous witnesses, and some of their friends and relatives; and the staff counsel to the Indiana Judicial Qualifications Commission.[1] Loubser alleged that the defendants conspired to violate her due process and equal protection rights in her divorce case because of her South African heritage and for other corrupt reasons.

Loubser's 71-page amended complaint is a rambling and often incoherent statement of grievances related to her divorce case, presented in a stream-of-consciousness narrative. It has the paranoid and borderline fantastic quality described in the majority opinion. Among other injuries, Loubser claims the defendants' actions have deprived her of property; kept her in a state of "involuntary servitude"; impeded her "pursuit of happiness"; and interfered with her "liberty to live where she chose [sic] to," her liberty to have children, and her "liberty to work where she wanted to and to chose [sic] how much she wants to work." She made an unusually precise damages demand, seeking $1,169,850.70 in compensatory damages and $3,509,552 in punitive damages.

The district court dismissed the case for lack of jurisdiction under both the *Rooker-Feldman* doctrine and the domes-

---

[1] She also sued the United States but voluntarily dismissed that claim.

tic relations exception to federal jurisdiction. The court held that Loubser was essentially attempting to undo the results of her state court divorce case.

Under the *Rooker-Feldman* doctrine the lower federal courts lack jurisdiction to review or modify state court civil judgments. *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Schmitt v. Schmitt*, 324 F.3d 484, 486 (7th Cir. 2003). As the Supreme Court recently clarified, the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1521-22 (2005).

There is no question that Loubser's amended complaint is an attack on the proceedings in her state court divorce case, alleging due process and equal protection violations; the district court's conclusion that *Rooker-Feldman* blocked federal jurisdiction was thus quite understandable. But this court has held that *Rooker-Feldman* does not prevent litigants from seeking a federal remedy for alleged violations of their constitutional rights where "the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment." *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995). To the extent that Loubser is contending she was denied the right to be judged by an uncorrupted tribunal and seeks damages for the resulting harm, *Nesses* holds that *Rooker-Feldman* does not apply. It seems to me that the *Nesses* exception could consume the *Rooker-Feldman* rule if interpreted too broadly, but I do not quarrel with its applicability here.

Nor do I disagree with the majority's conclusion that the domestic relations exception does not apply. The exception prohibits federal courts from hearing custody, divorce, and alimony disputes or any related claims that arise from these domestic relations matters. *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998); *Allen v. Allen*, 48 F.3d 259, 262 (1995). I agree that Loubser's claims of conspiracy are not domestic relations matters.

This common ground brings up the alternative arguments to affirm the judgment, and here I part company with the majority in certain significant respects. The amended complaint targets several categories of defendants. The first includes the judges, Robert Thacker and Rex Kepner, who are immune from suit. See *Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005). I agree with the majority's decision to affirm the dismissal of the case against them.

The next category includes the court reporters who, unlike the judges, do not enjoy absolute immunity from suit. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436-37 (1993). Loubser alleges that the reporters altered portions of the transcript in her divorce case. But a "plaintiff does not have a constitutional right to a totally accurate transcript of his . . . trial." *Tedford v. Hepting*, 990 F.2d 745, 747 (3d Cir. 1993). A plaintiff's constitutional rights are violated only if the "inaccuracies in the transcript adversely affected the outcome" of the proceeding. *Id.* See also *Colyer v. Ryles*, 827 F.2d 315, 316 (8th Cir. 1987) (explaining that a civil complaint for damages was frivolous where the plaintiff was not prejudiced by an allegedly altered transcript). Loubser does not claim that the alleged alterations in the transcript adversely affected the outcome of her divorce case; there are no further allegations against the court reporters. Loubser has not alleged an actionable constitu-

tional violation by the court reporters, and I would affirm the dismissal of the claims against them.

The allegations against the staff counsel for the Indiana Judicial Qualifications Commission are wholly insufficient to state a constitutional claim. The amended complaint alleges that the attorney, Meg Babcock, was "informed . . . by mail" that Thacker "used his knowledge from outside of the court room to decide the division of assets in the court room" and "turned a blind eye to it." Loubser has not alleged that Babcock personally participated in a constitutional violation, nor has she alleged any proper alternative basis for liability on the part of the attorney. See *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001); *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001). I would affirm the dismissal of the claim against Babcock.

Finally, the largest category of defendants consists of the numerous private actors: Loubser's ex-husband; the attorneys and the paralegal; the witnesses in the divorce case; some of their friends and relatives. The allegations about the conduct of these defendants comprise almost the entire amended complaint. Section 1983 can reach private citizens only where a plaintiff adequately alleges that they conspired with a state actor to deprive that plaintiff of a constitutional right. See *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000). Specifically, a plaintiff must allege in her complaint that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Id.* (internal quotations and citation omitted). A generalized allegation of conspiracy that fails to identify the timing, scope, and terms of the agreement between the private person and one or

more state actors will not satisfy even the minimal require-
ments of notice pleading under FED. R. CIV. P. 8. See *Ryan v.
Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999).

For all its length and meandering density, the amended
complaint contains only generalized allegations of con-
spiracy. Although Loubser has identified a basic time frame
and conspiratorial purpose, she has not alleged that each of
the private citizen defendants entered into an agreement
with one or more state actors to deprive her of her constitu-
tional rights, nor has she clearly alleged their individual
participation in joint activity with state agents. To be sure,
the amended complaint purports to describe some of the
activities of some of these defendants during the course of
the divorce case, but it does so mostly incoherently. The
more readily decipherable allegations do not assert the
existence of an agreement or understanding as between each
of the individual private citizen defendants and a state
actor. Instead, Loubser has pleaded a jumbled collection of
alleged misdeeds by some of the private citizen defendants
during the state court divorce proceedings, together with a
generalized allegation of conspiracy. This is insufficient to
state a § 1983 claim against the private citizen defendants.

As noted by the majority, the purpose of federal plead-
ing requirements is to provide notice to the defendant
to facilitate the preparation of a response. But another
equally important purpose is "to allow the court to deter-
mine at the outset of the litigation, before costly discovery is
undertaken, whether the plaintiff has any tenable theory or
basis of suit, so that if he does not the case can be got rid of
immediately without clogging the court's docket and
imposing needless expense on the defendant." *Ryan*, 188
F.3d at 860. Loubser's amended complaint does not ade-
quately allege a tenable basis for a § 1983 civil

rights conspiracy claim against the private citizen defendants.[2] We should not put them to the needless expense of continuing to defend against it, nor should we burden the lower court by returning a meritless case to its docket. I would affirm the judgment dismissing the case in its entirety.

---

[2] Leave to replead is not warranted here. The amended complaint is Loubser's second try at pleading a civil rights conspiracy by the defendants; she has not succeeded in filing a short, plain, and actionable claim.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*