Maris **FRIEDLANDER**, also known as Maris Freed, and Zangwill Freed, Plaintiffs–Appellants,

v.

Burton G. **FRIEDLANDER**, Defendant–Appellee.

No. 98–1391.

United States Court of Appeals, Seventh Circuit.

Submitted July 7, 1998.

Decided July 27, 1998.

Edward Kaplan (submitted on briefs), Edward Kaplan & Associates, Chicago, IL, for Plaintiffs–Appellants.

Before POSNER, Chief Judge, and BAUER and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

This is a diversity suit for intentional infliction of emotional distress and related torts under the common law of Illinois. The plaintiffs are Maris Freed and her father, Zangwill Freed. They are citizens of Illinois. The defendant is Maris's ex-husband, Burton Friedlander, a citizen of Connecticut. Maris and the defendant were divorced by order of a New York state court, which awarded Maris substantial alimony. When the defendant did not pay, she filed the New York judgment in an Illinois state court and brought suit upon it for the arrears of alimony. That

suit is currently stayed pending arbitration pursuant to a provision of the New York judgment.

The district court granted the defendant's motion to dismiss the diversity suit on the basis of the judge-made (but assumed to be congressionally ratified) "domestic relations" exception to the diversity jurisdiction. *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The court's order reads in its entirety as follows:

> The Court's review of this recently-filed case, including the original and amended complaints, leaves it with serious concerns over its subject matter jurisdiction in this case. Plaintiffs are improperly seeking to make a federal case out of a domestic relations dispute which is currently pending in state court. See, e.g., *Allen v. Allen*, 48 F.3d 259 (7th Cir.1995). Therefore, this court has concluded that this complaint must be dismissed without prejudice to the litigation of these issues in state court. See *[T.W. by] Enk v. Brophy*, 124 F.3d 893 (7th Cir.1997).

Neither case cited by the judge, as we shall see, supports his decision.

According to the complaint, which is all that we have to go on, the defendant phoned Zangwill Freed and told him that unless he persuaded his daughter to drop her legal proceedings against the defendant, the defendant would reveal to her that Zangwill is not, as she believed, her natural father, but merely her adoptive father whose wife, Maris's mother, had become pregnant by another man. Zangwill was emotionally devastated by the defendant's threat, but thought it better that Maris should learn that he was not her natural father from him rather than from the defendant, and so he told her; and she was devastated by the news too.

In this early stage of the litigation, we may assume that the complaint states a tort claim under Illinois law. The only question is whether the domestic relations exception to the diversity jurisdiction bars the suit. That it does not is clear from our decision in *Lloyd v. Loeffler*, 694 F.2d 489 (7th Cir.1982), which involved a suit for interference with custody, and from many subsequent decisions, such as *McIntyre v. McIntyre*, 771 F.2d 1316 (9th Cir.1985); *DiRuggiero v. Rodgers*, 743 F.2d 1009, 1018–20 (3d Cir.1984), and *Stone v. Wall*, 135 F.3d 1438 (11th Cir.1998), all similar to *Lloyd*—and, better yet, from *Raftery v. Scott*, 756 F.2d 335, 337–38 (4th Cir.1985), and *Drewes v. Ilnicki*, 863 F.2d 469 (6th Cir.1988), both cases like this one of intentional infliction of emotional distress.

■ The domestic relations exception has a core and a penumbra. The core is occupied by cases in which the plaintiff is seeking in federal district court under the diversity jurisdiction one or more of the distinctive forms of relief associated with the domestic relations jurisdiction: the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support. In *Allen v. Allen*, on which the district judge relied, the plaintiff was seeking visitation rights with his child in contravention of a state court's decree. *T.W. by Enk* similarly involved a challenge to a custody decree; we said that "Enk and his lawyer appear to be trying to remove a Wisconsin domestic relations case to the federal courts." 124 F.3d at 897. The present case, in contrast, is not within the core.

The penumbra of the exception consists of ancillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding. *Lloyd v. Loeffler, supra*, 694 F.2d at 492–93; *Kahn v. Kahn*, 21 F.3d 859 (8th Cir.1994); *Vaughan v. Smithson*, 883 F.2d 63 (10th Cir.1989) (per curiam). A dictum in *Ankenbrandt* might be thought to cast doubt on the existence of the penumbra: "the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." 504 U.S. at 704, 112 S.Ct. 2206. But the issue of the outer bounds of the exception, and hence of what we are calling its penumbra, was not remotely before the Court; for the case, brought by a mother against her divorced husband on behalf of their children for physical and sexual abuse, lay far outside any plausible conception of the penumbra. We had held in *Lloyd* that the domestic relations exception to diversity jurisdiction did not extend to proceedings that merely arise out of a domestic

relations dispute; and any doubt about the validity of that holding was dispelled by *Ankenbrandt*. Had Mr. Friedlander murdered his former father-in-law, the ensuing suit for wrongful death would not have been conducted by a domestic relations court as an ancillary proceeding to the original divorce case; and it makes no difference that, happily, he did not behave quite so egregiously.

■ To the extent that a federal tort suit brought under the diversity jurisdiction and a domestic relations proceeding in state court overlap, though not to the point where the tort suit falls within the domestic relations exception, the district judge can stay the federal suit in order to prevent it from operating as an engine of conflict, harassment (often an element of domestic relations litigation), or duplication. See, for the general proposition, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813–21, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Sverdrup Corp. v. Edwardsville Community Unit School District No. 7*, 125 F.3d 546, 549–50 (7th Cir.1997); *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 572–73 (7th Cir.1989); *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1306–08 (7th Cir.1988), and for its application to domestic relations litigation *Ankenbrandt v. Richards, supra*, 504 U.S at 705–06, 112 S.Ct. 2206; *Kahn v. Kahn, supra*, 21 F.3d at 860 n. 1; *American Airlines, Inc. v. Block*, 905 F.2d 12, 14–15 (2d Cir.1990) (per curiam); *Rogers v. Janzen*, 891 F.2d 95 (5th Cir.1989); *Ingram v. Hayes*, 866 F.2d 368 (11th Cir.1988) (per curiam); *Armstrong v. Armstrong*, 508 F.2d 348, 350 (1st Cir.1974). But the district judge erred in thinking that there was any jurisdictional obstacle to this suit; and it is too early to tell whether the grant of a stay would be proper.

REVERSED.